# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TARICK ALI, by his personal
representative, MONICA ALI,

        Plaintiff,

        v.

DISTRICT OF COLUMBIA
GOVERNMENT,

        Defendant.

Civil Action 08-01950 (HHK)

## MEMORANDUM OPINION AND ORDER

Tarick Ali was employed by the District of Columbia in its Fire and Emergency Medical Services Department ("the Department"). By his personal representative, Monica Ali,[1] he brings this action against the District alleging that the District violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq,* by discriminating against him on the basis of his religion and retaliating against him for opposing that discrimination. Before the Court is the District's motion for summary judgment [#44], which argues that Ali did not experience any adverse action that could support a Title VII claim. Upon consideration of the motion, the opposition thereto, the record of this case, and oral argument of counsel, the Court concludes that the motion must be granted in part and denied in part.

---

      [1] Tarick Ali is deceased. For the sake of simplicity, the Court will refer to Tarick Ali as if he were the plaintiff in this case. *See Ali v. D.C. Gov't*, 697 F. Supp. 2d 88, 89 n.1 (D.D.C. 2010).

# I. BACKGROUND

At all times relevant to this action, Ali was a firefighter and emergency medical technician in the employ of the Department. Ali was also a practicing Muslim; in accordance with the dictates of his faith, he prayed five times each day. Ali's claims against the District arise from two altercations between him and his commanding officer, Lieutenant Michael Malinowski, during the summer of 2006.

## A. The June 15, 2006 Drill and Lineup

On June 15, 2006, Ali's engine company was scheduled for a "physical wellness assessment" and training exercise. Pl.'s Opp'n Ex. 26 ("Hutchinson Mem.") at 1. At the scheduled time, Malinowski called for the company to assemble at the truck. Ali and fellow firefighter Marcus Craig did not appear. Malinowski then rang the firehouse bell, after which Ali and Craig appeared.[2] Malinowski angrily demanded an explanation; they responded that they were praying. Malinowski then ordered Ali and Craig to prepare special reports explaining their slow response time. Hutchinson Mem. at 1; Pl.'s Opp'n Ex. 5 ("Malinowski Dep.") at 30.[3]

After the drill, Malinowski met with Craig, who complained that Malinowski did not treat Black and Muslim firefighters as well as he treated other firefighters, and argued that Malinowski's order to prepare a special report was unfair. Craig Decl. ¶ 7. Malinowski told Craig that the drill incident could be resolved informally and that Craig did not need to produce a special report. He then said that "Craig must make a choice between his job and his religion

---

[2] According to Craig, he and Ali responded "within seconds" of hearing the bell sound. *See* Pl.'s Opp'n Ex. 6 ("Craig Decl.") ¶ 4.

[3] A "special report" is "an official communication to the department or a member of the department." Malinowski Dep. at 30.

when at work, for if the religious activities continued to interfere with his duties it could have a negative impact on his job performance." Hutchinson Mem. at 1. At the time of these events, Craig was subject to a "last chance agreement," *i.e.*, he was effectively on probation and could be subject to termination for even a minor departmental infraction. *See* Pl.'s Opp'n Ex. 4 ("Dove Dep.") at 41; Hutchinson Mem. at 1 & n.2; *see also U.S. Dep't of Air Force v. FLRA*, 949 F.2d 475, 478 (D.C. Cir. 1991) (describing last chance agreements generally). Craig's last chance agreement did not, however, come up during his conversation with Malinowski. Craig Decl. ¶ 9.

Malinowski then had roughly the same conversation with Ali, telling him that he need not prepare a special report, *see* Hutchinson Mem. at 1–2, and suggesting that he needed to decide which was more important, his job or his religion. *See* Pl.'s Opp'n Ex. 12 ("Meeting Tr.") at 7.

**B.     The June 27, 2006 Sign-In Order**

The second incident underlying Ali's claims occurred on June 27. Malinowski had previously been ordered by his superior, Terry Reynolds, to enforce a requirement that all firefighters "sign in and out for gear, relief, apparatus, etc." Hutchinson Mem. at 2; *see* Pl.'s Opp'n Exs. 8, 9 (emails from Reynolds to Malinowski and other officers reminding them to "[m]ake sure that the journal is done per the orders"). A check of the journal that Ali's engine company was supposed to sign revealed to Malinowski that Ali had failed to do so; accordingly, Malinowski ordered Ali to begin signing the journal. Because others, including Malinowski himself, had previously failed to sign the journal, Ali believed that he had been unfairly singled out. He thus drafted a special report that described the June 15 drill incident and the June 27 sign-in order as examples of harassing behavior by Malinowski. *See* Pl.'s Opp'n Ex. 10 ("June

27 Ali Report"). Malinowski forwarded the report to his superiors and requested an investigation. Hutchinson Mem. at 2.

C.     The July 5, 2006 Meeting and Mediation

On July 5, Ali and Malinowski met with Battalion Chief Stephen Dove regarding their dispute. Ali complained that Malinowski's remark that Ali needed to choose between his job and his religion was "out of line." Meeting Tr. at 5. Malinowski acknowledged making the remark but asserted that he was responsible for the performance of his subordinates, which, he averred, made the comment appropriate under the circumstances. Meeting Tr. at 7, 20. Malinowski and Dove both suggested that if Ali pursued his complaint, other members of the fire company, including Marcus Craig, would need to be disciplined for failing to sign the journals. Meeting Tr. at 11–13. Ali protested: "say[ing] . . . if I push it on, . . . everybody else is going to get in trouble . . . that's like a form of extortion." Meeting Tr. at 15. Dove responded that he was "just letting [Ali] know the ramifications of" sending the report up the chain of command. Meeting Tr. at 15. The meeting concluded with Dove ordering "fresh reports" from Malinowski and other members of the fire company as to why firefighters were not signing the journals. Meeting Tr. at 24; *see* Pl.'s Opp'n Ex. 23 ("Dove Report") at 1–2. Ali's special report was then forwarded to Deputy Chief James Talbert, *see* Hutchinson Mem. at 3; Dove Report at 2, and the other members of Ali's engine company were summoned to a line-up and ordered to "do special reports because of . . . Ali's complaint." Craig Decl. ¶ 11.

Shortly after the meeting concluded, Dove requested that Malinowski and Ali attempt to resolve their dispute via mediation. They agreed, and met with Lieutenant Edgar J. Hoover that afternoon. At Hoover's prompting, Ali stated that an apology from Malinowski would settle the

matter. After a short discussion between Malinowski and Ali, Malinowski apologized and the two shook hands. *See* Pl.'s Opp'n Ex. 25 ("Hoover Report") at 1. At Talbert's request, relayed via Dove, both men then prepared statements saying that their "private disagreement" had been settled. *See* Pl.'s Opp'n Ex. 11; Dove Report at 2. Upon receiving these statements, Talbert withdrew Ali's special report. According to Hutchinson, Ali later explained that he had agreed to withdraw his report "because he had no desire to have Craig disciplined and perhaps terminated." Hutchinson Mem. at 3.

D. **Hutchinson's EEO Investigation and Recommendations**

In the weeks following their mediation, Malinowski and Ali appeared to work comfortably together. In late September, however, Ali raised Malinowski's job-or-religion remark with Detria Hutchinson, the Department's Diversity/EEO Program Manager. After an investigation, Hutchinson concluded that some "corrective action" against Malinowski was "imperative," and recommended that he enroll in two courses through the District's Center for Workforce Development, on his own time and without overtime pay. Hutchinson Mem. at 4. She also found that Dove's July 5 statement that Ali's pursuit of his report would require Dove to address allegations against other firefighters to be "unacceptable" and an "interference [with] Ali's EEO rights." Hutchinson Mem. at 4. She therefore "cite[d]" Dove for interfering with Ali's right to participate effectively in the EEO process, and recommended that Dove enroll in Workforce Development courses and be disciplined appropriately. Finally, Hutchinson recommended that Talbert enroll in a Workforce Development course because he had too readily dropped the investigation into Ali's report. *See* Hutchinson Mem. at 4.

## II. LEGAL STANDARD

A motion for summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must support its factual positions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets its burden, the non-moving party must then establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the non-moving party must show that "the evidence is such that a reasonable jury could return a verdict" in its favor. *Anderson*, 477 U.S. at 248. Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine dispute for trial. *See* FED. R. CIV. P. 56(c)(1), (e); *Celotex*, 477 U.S. at 322 n.3. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

## III. ANALYSIS

A.  **Evidence Properly Before the Court**

Rule 56 allows a party seeking or opposing summary judgment to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). The District objects that many of the exhibits that Ali presents in opposing the District's summary judgment motion constitute or contain inadmissible hearsay. The District does not explain the basis for its objection to any specific exhibits, merely listing those that it finds problematic. The District's argument is largely unavailing.

To begin with, the District overlooks two doctrinal distinctions that are important here. The first is the difference between evidence that is admissible at trial and evidence that the Court may consider at summary judgment. At summary judgment, material will be disregarded only if it "cannot be presented in a form that would be admissible in evidence" at trial. FED. R. CIV. P. 56(c)(2). Thus, to defeat summary judgment, a nonmovant "is not required to produce evidence in a form that would be admissible at trial," so long as her evidence is "capable of being *converted into* admissible evidence." *Catrett v. Johns-Manville Sales Corp.*, 826 F.2d 33, 38 (D.C. Cir. 1987) (emphasis added); *see Gleklen v. Democratic Congr. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000). Consequently, the District is wrong to assert that the Court may not consider Ali's exhibits if they "cannot be introduced at trial *in this format*." *See* Def.'s Reply at 3 (emphasis added).

The District's second oversight relates to the definition of hearsay itself. Hearsay is an out-of-court statement that is "offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). The District's blunderbuss objection to Ali's exhibits overlooks the fact that

7

many of them are not "offered . . . to prove the truth of the matter asserted." *See* 2 MCCORMICK ON EVID. § 249 (6th ed. 2009) ("If [a] statement is not an assertion or is not offered to prove the facts asserted, it is not hearsay.").

When these distinctions are applied to Ali's exhibits, it is clear that the majority would be admissible at trial for at least some purpose, and that others are "capable of being converted into admissible evidence" such that the Court may consider them now. *Catrett*, 826 F.2d at 38. First, many of Ali's exhibits are not offered to prove the facts asserted therein. *See* Pl.'s Opp'n Exs. 8 (email from Reynolds ordering Malinowski and others to have officers sign journals), 9 (same), 11 (Ali report stating that his private dispute with Malinowski had been resolved informally), 13–22 (fire company journal entries). These materials are offered to show that certain statements were made or to establish the effect of those statements on their recipients, and thus are not hearsay. *See* 2 MCCORMICK ON EVID. § 249. Likewise, Dove's special report, which describes Ali's complaint and the events of July 5, is not hearsay because it is an admission by a party opponent. *See* FED. R. EVID. 801(d)(2)(D); *Talavera v. Shah*, 638 F.3d 303, 309–10 (D.C. Cir. 2011) (in employment cases, statements by officials who were responsible for or involved in the challenged actions are party admissions under Rule 801(d)(2)).

Further, the record of the July 5 meeting between Ali, Dove, and Malinowski — although hearsay in its present form — is obviously "capable of being converted into admissible evidence." *Catrett*, 826 F.2d at 38. The record is merely a written transcription of an audio tape that recorded the conversation at the meeting. *See* Meeting Tr. at 27. Because the District offers no basis for the Court to conclude that the audio tape itself would not be admissible at trial, the transcript may be considered for the purposes of summary judgment. *See Catrett*, 826 F.2d at 38

8

(allowing the use of a letter at summary judgment because "even if the . . . letter itself would not be admissible at trial, [its proponent] has gone on to indicate that the substance of the letter is reducible to admissible evidence in the form of trial testimony").

Finally, the memorandum written by Detria Hutchinson, describing the entire course of events from the June 15 drill incident through Hutchinson's investigation of Ali's complaints in September, is hearsay but is nevertheless admissible under Rule 803(8)(C)'s exception for investigative reports. *See Allen v. Chi. Transit Auth.*, 317 F.3d 696, 700 (7th Cir. 2003) (holding that findings by investigators from the defendant-agency's affirmative action unit were "admissible . . . as an investigative report of a public agency" in a Title VII suit); *cf. Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976) ("Prior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo." (citing FED. R. EVID. 803(8)(C)).[4]

The District is correct, however, that some of Ali's exhibits contain inadmissible or incompetent material. First, and most crucially, the entire special report that Ali drafted on June 27 describing his interactions with Malinowski is hearsay. The report is plainly offered to prove the events described therein, and, because Ali is deceased, is not "capable of being converted into

---

[4] Rule 803(8)(C) allows for the admission of public records or reports, in any form, containing "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." FED. R. EVID. 803(8)(C). Because the District has made no attempt to show that "the sources of information or other circumstances" surrounding the memorandum "indicate lack of trustworthiness," the Court will not disregard it at this time. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1482 (D.C. Cir. 1991) ("Rule 803(8)(C) assumes admissibility in the first instance. . . .")(quoting FED. R. EVID. 803 advisory committee note); *Id.* ("The burden is on the party disputing admissibility to prove the factual finding to be untrustworthy.") (quoting *United States v. Am. Tel. & Tel. Co.*, 498 F. Supp. 353, 364 (D.D.C. 1980)).

admissible evidence" in the form of trial testimony. *Gleklen*, 199 F.3d at 1369; *see* FED. R. CIV. P. 56(c)(2). Second, because Ali's complaint and the District's answer are unverified, they are "accorded no evidentiary weight in deciding [the District's] summary judgment motion." *Gallucci v. Schaffer*, 507 F. Supp. 2d 85, 92 (D.D.C. 2007). Finally, certain otherwise-admissible exhibits contain some hearsay statements. *See, e.g.*, Hoover Report at 1 (repeating Ali's description of Malinowski's job-or-religion comment); Dove Report at 1 (same). Although the Court will not, of course, rely on such statements, the District is wrong to suggest that the Court may not consider these documents simply because they contain *some* inadmissible material; the hearsay rule excludes statements, not documents. *See* FED. R. EVID. 801–802.[5] Having resolved the District's evidentiary arguments, the Court now turns to the merits of Ali's claims.

## B. Ali's Discrimination and Retaliation Claims

Ali brings two Title VII claims against the District: he alleges that the Department discriminated against him on the basis of his religion, and that it retaliated against him for objecting to that discrimination.[6] The District argues that neither claim can survive summary

---

[5] Finally, the Court makes no use of some of the documents to which the District objects, and thus does not address their admissibility. *See* Pl.'s Opp'n Exs. 27 (Smith Mem.), 28 (Herlihy Mem.).

[6] The "Jurisdiction and Venue" section of Ali's amended complaint states that the Court has jurisdiction over Ali's suit not only under Title VII of the Civil Rights Act of 1964, but also under the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq*. *See* Am. Compl. ¶ 2. The portion of the complaint that sets out Ali's claims, however, makes no mention of these other provisions, and Ali's opposition to the District's summary judgment motion refers only to Title VII. Accordingly, the Court does not understand Ali to raise claims under these other provisions. Further, § 1981a does not create a cause of action, but rather provides for damages in certain discrimination cases. *See* 42 U.S.C. § 1981a(a)(1).

judgment because Ali has failed to establish that he experienced an adverse action within the meaning of Title VII. Because the adverse action requirement operates differently in discrimination and retaliation cases, the Court will address each claim separately.

### 1. Discrimination on the Basis of Religion

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C.A. § 2000e-2(a)(1). At the summary judgment stage, Title VII discrimination claims are analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which first requires the plaintiff to establish a prima facie case of discrimination. *Id*. at 802.[7] To do so, a plaintiff must show that: (i) she is a member of a protected class; (ii) she suffered an adverse employment action; and (iii) the unfavorable action gives rise to an inference of discrimination. *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) (citing *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002)). The District seeks summary judgment on Ali's discrimination claim on the sole ground that he is unable to establish a prima facie case because he cannot show that he suffered an adverse employment action.

In Title VII discrimination cases, an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly

---

[7] The D.C. Circuit has explained that "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision," the district court should set aside the burden-shifting framework and move directly to the ultimate issue of discrimination. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Here, however, the District disputes that Ali has in fact suffered an adverse employment action; thus, the *McDonnell Douglas* structure still governs.

different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (internal quotation marks omitted). Put another way, a discrimination plaintiff alleging adverse action must have experienced "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)).

Here, Ali identifies a raft of events that, he avers, constitute adverse action: Malinowski's job-or-religion comment to Ali; Ali's meeting with Dove and Malinowski; the subsequent mediation with Hoover; Dove and Malinowski's threat to discipline Marcus Craig, which could have caused Craig's termination; and Dove's threat to require the fire company to prepare special reports regarding their failure to sign the journals. *See* Pl.'s Opp'n at 24. None of these events, however, constitutes adverse action for the purposes of a Title VII discrimination claim.[8]

As explained above, a finding of adverse action requires "objectively tangible harm." *Forkkio*, 306 F.3d at 1131. Ali identifies no such harm that resulted from Malinowski's job-or-religion comment. Malinowski was certainly criticizing Ali's performance (in a particularly insensitive fashion), but criticism from a supervisor that does not affect a subordinate's employment status or opportunities is not adverse action. *See Taylor*, 350 F.3d at 1293 (citing

---

[8] Ali also identifies two other ostensibly adverse actions: being "forced" to change the title of (and "strongly encouraged" to change the wording of) his June 27 special report, and "being ordered to prepare a special report for allegedly not signing the journal where others had not done so." Pl.'s Opp'n at 24. These events, however, are both described only in Ali's report itself, *see* June 27 Ali Report at 1, which is pure hearsay and incapable of conversion into admissible evidence. *See supra* section III.A. Moreover, there is no indication that either had any tangible consequences for Ali.

*Brown*, 199 F.3d at 457–58).[9] Likewise, Ali identifies no consequences for "the terms, conditions, or privileges of [his] employment," *Forkkio*, 306 F.3d at 1131, that stemmed from his July 5 meeting with Dove and Malinowski or from the mediation with Hoover later that day.[10]

Dove and Malinowski's threats to discipline Craig and require the other members of the fire company to write special reports present a closer question, but still do not rise to the level of adverse action. Malinowski threatened to "charge" Craig if Ali pursued his complaint, Meeting Tr. at 12, which, as a result of Craig's last chance agreement, apparently amounted to a threat to fire him. *See* Dove Dep. at 41. However, there is no indication that this threat was ever carried out, and "mere threats . . . do not rise to the level of an adverse employment action because they result in no materially adverse consequences or objectively tangible harm." *Valles-Hall v. Ctr. For Nonprofit Advancement*, 481 F. Supp. 2d 118, 144 (D.D.C. 2007); *accord Lutkewitte v. Gonzales*, 436 F.3d 248, 271 (D.C. Cir. 2006) (Brown, J., concurring); *Cromwell v. Wash. Metro. Area Transit Auth.*, 2006 WL 2568009, at * 7 (D.D.C. Sept. 5, 2006).[11] And, although the threat

---

[9] Ali also fails to link the job-or-religion remark to any other putatively adverse action. His case is thus different from those where an official responsible for a challenged employment action has made a discriminatory remark (which can suggest that the action was motivated to some degree by discriminatory animus). In such cases, it is the challenged employment decision, not the comment itself, that satisfies the adverse action requirement. *See, e.g., Prater v. FedEx Corp. Servs., Inc.*, 2009 WL 1725978, at *6–7 (D.D.C. June 18, 2009) ("[A] sufficient nexus between discriminatory statements *and an adverse employment action* can create an inference of discrimination." (emphasis added)).

[10] The possibility that Ali's presence at the meeting and mediation may have been mandatory, *see* Pl.'s Opp'n at 24, is irrelevant without some indication of tangible employment consequences. Further, Ali's characterization of the meeting and mediation as "forced" appears to be without support in the record.

[11] The Court notes that this Court and others in this district have attributed the language "mere threats . . . do not rise to the level of an adverse employment action because they result in no materially adverse consequences or objectively tangible harm" to the D.C. Circuit's

to order the other members of the engine company to write special reports *was* carried out, *see* Craig Decl. ¶ 11, there is no suggestion in the record that Craig or any of Ali's colleagues experienced any tangible employment consequences as a result.[12] Thus, even leaving aside the fact that these threats were not directed at Ali himself, no reasonable juror could conclude that they constituted adverse action.

Nor can these events combine to create a hostile work environment.[13] A work environment, even if objectionable, does not become actionable unless the offensive conduct "permeate[s] [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). A plaintiff "must demonstrate that the alleged events leading to the hostile work environment were connected, since 'discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and

---

opinion in *Forkkio*, 306 F.3d at 1131. As noted above, however, this language actually originated in the district court opinion in *Valles-Hall*, 481 F. Supp. 2d at 144.

[12] As noted above, the only information in the record on the nature of "special reports" suggests that they are not inherently disciplinary or punitive, and can serve to communicate any type of information. *See supra* note 3. Accordingly, being required to draft one cannot, at least on this record, constitute adverse action. *Cf. Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (requiring an employee to submit reports on the status of her work did not constitute materially adverse action for retaliation purposes).

[13] Although, at the hearing held before the Court, the District contended that Ali's amended complaint does not present a "hostile work environment" claim, those words do appear in the complaint. *See* Am. Compl. ¶ 32. Thus, although Ali's opposition fails to make any argument on this point, the Court briefly addresses the issue here.

pervasive discriminatory intimidation or insult.'" *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 103 (D.D.C. 2010) (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003)) (omission in original). Here, Ali merely asserts that each of the events that he alleges were discriminatory also contributed to a hostile work environment; but a plaintiff "cannot so easily bootstrap discriminatory claims into a hostile work environment claim." *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005) (citing *Lester*, 290 F. Supp. 2d at 33). Ali makes no effort to show that these events collectively created an abusive working environment severe or pervasive enough to alter the conditions of his employment. *See Oncale*, 523 U.S. at 81. Thus, his discrimination claim cannot proceed under either a discrete disparate impact theory or a hostile work environment theory, and summary judgment for the District on this claim is required.

### 2. Retaliation for Opposing Religious Discrimination

In addition to banning discrimination, Title VII also prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show that: (i) she engaged in protected activity; (ii) she suffered a materially adverse action by her employer; and (iii) a causal connection existed between the two. *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citing *Brown*, 199 F.3d at 452). As above, the District challenges Ali's prima facie case on the sole ground that he did not suffer a judicially cognizable adverse action.

15

The scope of the adverse action requirement is broader in retaliation cases than in discrimination cases. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63–64 (2006). A retaliation plaintiff may prevail by showing *materially* adverse action, which is "not limited to discriminatory actions that affect the terms and conditions of employment," *id.* at 64, but rather reaches any conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1213 (D.C. Cir. 2006)) (internal quotation marks omitted); *see Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). Whether any given act would have that effect "will often depend upon the particular circumstances. Context matters." *Burlington*, 548 U.S. at 69. Significantly, while unrealized threats cannot constitute adverse action in discrimination cases, they *can* be materially adverse for retaliation purposes. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 578 (D.C. Cir. 2010) ("A threatening verbal statement, standing alone, might well constitute a materially adverse action.").[14]

Here, Ali identifies as materially adverse the same range of actions that he asserts were adverse for the purposes of his discrimination claim. *See* Pl.'s Opp'n at 24. And here, as there, most do not rise to the level of adverse action, even under the broader definition employed in retaliation cases. One action, however, clears the bar of material adversity: Dove and

---

[14] The Court agrees with Ali that the District appears to have confused the two adverse action standards. The District relies on *Raymond v. U.S. Capitol Police Bd.*, 157 F. Supp. 2d 50 (D.D.C. 2001), for the proposition that although "an employee need not be fired, demoted or transferred to make out a case of retaliation," she must show "a tangible change in responsibilities or working conditions that constitutes a material employment disadvantage." *Id.* at 56 (quoting *Gary v. Wash. Metro. Area Transit. Auth.*, 886 F. Supp. 78, 90 (D.D.C. 1995)) (internal quotation marks omitted). *Raymond*, however, predates both the D.C. Circuit's recognition of the difference in scope between the two standards, *see Rochon*, 438 F.3d at 1217–18, and the Supreme Court's ratification of that conclusion in *Burlington*, 548 U.S. at 68.

Malinowski's threat to discipline, and likely terminate, Ali's coreligionary and close friend Marcus Craig.

At the July 5 meeting, Dove asserted that if Ali pursued his complaint against Malinowski, an investigation into the conduct of Ali's fellow firefighters would result. *See* Meeting Tr. at 11–12. Malinowski then said:

> I would have to charge Marcus. . . . and I don't have any choices. I've got to send a report up explaining that people weren't doing their jobs. And I was seeing it. And it forces me to investigate, and it forces me to make people do their reports, and then that forces me to charge them.

Meeting Tr. at 12–13. Ali protested: "you say . . . if I push on, you know, everybody else is going to get in trouble. I mean, that's like a form of extortion." Meeting Tr. at 15. Dove responded: "No it isn't. If you want to send this thing through, I'll send it through. I'm just letting you know the ramifications of it." Meeting Tr. at 15. After the meeting ended, the members of Ali's company were told during a lineup that they would have to draft special reports "because of Firefighter Ali's complaint." Craig Decl. ¶ 11.

At the time of the meeting, all three men present were aware that Craig was subject to a last chance agreement, under which any disciplinary infraction could lead to his termination. As Dove put it during his deposition, "Marcus would have had the most to lose from anything like [the fire department taking action against Ali's company members] . . . . I mean, and that was [Ali's] best friend." Dove Dep. at 41. Indeed, Ali later told Hutchinson that "he withdrew his . . . special report because he had no desire to have Craig disciplined and perhaps terminated." Hutchinson Mem. at 3. On these facts, a reasonable juror could easily conclude that Dove and

17

Malinowski's remarks were intended, and understood, as a serious threat to fire Craig if Ali pursued his complaint.

A credible threat of termination might well dissuade a reasonable employee from pursuing a charge of discrimination. *See Burlington*, 548 U.S. at 73 ("A reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former."); *EEOC v. Creative Networks, LLC*, 2009 WL 597214, at *6 (D. Ariz. Mar. 9, 2009) ("[T]hreats of termination . . . [directed at the plaintiff are] reasonably likely to deter others from engaging in protected activity."); *Rhodes v. Napolitano*, 656 F. Supp. 2d 174, 185–86 (D.D.C. 2009) (holding that a fruitless misconduct investigation that culminated in a letter threatening the plaintiff with discipline up to and including termination was materially adverse); *cf. Gaujacq*, 601 F.3d at 578 (stating that verbal threats can constitute materially adverse action, but holding that the deterrent effect of the termination threat alleged by the plaintiff was undermined by its context).

Moreover, a retaliatory action need not be directed at the party who engaged in the protected conduct that prompted it in order to be materially adverse. The Supreme Court recently held that Title VII was violated when an employee's fiancé was fired in retaliation for the employee's protected activity. *See Thompson v. N. Am. Stainless, LP*, —U.S.—, 131 S. Ct. 863, 868 (2011) ("We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired."); *see also DeMedina v. Reinhardt*, 444 F. Supp. 573, 580 (D.D.C. 1978) (reasoning that "[s]ince tolerance of third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected

rights under Title VII," Title VII's anti-retaliation provisions must necessarily reach materially adverse actions aimed at third parties).

Based on the foregoing — and particularly on the Supreme Court's opinion in *Thompson* — the Court concludes that Ali has established a genuine dispute of fact as to whether he experienced materially adverse action. To be sure, there are factual differences between this case and *Thompson*: Craig was threatened with termination rather than actually fired, and he was Ali's "best friend," not his fiancé. Dove Dep. at 41. It is thus unclear precisely where this case falls on the continuum between "firing a close family member," which "will almost always meet the *Burlington* standard," and "inflicting a milder reprisal on a mere acquaintance," which "will almost never do so." *Thompson*, 131 S. Ct. at 868. Even so, to stave off summary judgment, Ali need only show that a reasonable juror could conclude that the threat "*well might have* 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington*, 548 U.S. at 68 (quoting *Rochon*, 438 F.3d at 1213) (emphasis added); *see Fallon v. Potter*, 277 F. App'x 422, 429 n.29 (5th Cir. 2008) (stating that, under *Burlington*, whether an action is materially adverse "is a fact issue for the jury"). This burden is "not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Common sense suggests, and *DeMedina* and *Thompson* support the conclusion that, a reasonable worker would be deterred from pursuing a discrimination complaint by a credible threat to fire a close friend.[15] And finally, the causal

---

[15] This conclusion is further bolstered by Hutchinson's determination that Dove's assertion that Ali's complaint "would require Dove to address the allegations made against other members [of the engine company] is unacceptable and is an . . . *interference with Firefighter Ali's rights to effectively participate in the EEO process*." Hutchinson Mem. at 4 (emphasis added); *cf. Allen*, 317 F.3d at 700 (holding that the district court erred by disregarding the conclusions of agency affirmative action investigators regarding an agency decisionmaker's motivation for taking challenged employment action).

connection between the threat and Ali's protected activity is obvious: Dove and Malinowski's remarks during the meeting expressly tied the threatened consequences for Craig and the other firefighters to Ali's pursuit of his discrimination complaint (which the District does not dispute was protected activity under Title VII). Consequently, summary judgment for the District on Ali's retaliation claim is not warranted.[16]

### IV. CONCLUSION

For the foregoing reasons, it is this 31st day of August, 2011, hereby

**ORDERED** that defendant's motion for summary judgment [#44] is hereby **GRANTED** as to plaintiff's claim of religious discrimination and **DENIED** as to plaintiff's claim of retaliation.

Henry H. Kennedy, Jr.
United States District Judge

---

[16] As with his discrimination claim, however, Ali has provided no support for the proposition that the Department's allegedly retaliatory actions combined to create a hostile work environment; accordingly, Ali's retaliation claim may proceed only under the theory that Ali experienced a discrete, materially adverse retaliatory action. *See Nurriddin*, 382 F. Supp. 2d at 108.